We'll hear the next case on the calendar. We'll go back to the Kramer case. Morning, members of this honorable court. May it please the court, William S. Palmeri for the appellant, Edward Kramer. And first of all, I'd like to thank this honorable court for accommodating my traffic difficulties en route from Connecticut. I'd like to turn the court's attention to the matter before us, and that's that the district court, Judge Underhill, granted summary judgment on this matter alleging malicious prosecution. And I'd first like to turn to the issue of favorable termination, because a lot was stated in the oral argument and then the ruling from the bench about favorable termination in this matter. The court was simply incorrect on the matter and does acknowledge that in its ruling, which appears on A51 of the appendix, that the court has no case on point in finding that the circumstances under which the case terminated in Mr. Kramer's favor was unfavorable. There is simply no case that states that. And in fact, the law is very clear and plain on this matter. It draws from the underlying state law, and the federal law interpolates into that for questions of accrual and for other matters. But the standard is crystal, and it's that whether the defendant in the criminal action does something to purchase the nolly, and that is either stipulating, well, it's agreeing to any kind of program, stipulating to probable cause, doing anything to obtain that nolly, or, as the case recently set forth by this honorable court, SPAC, which is well- The record is clear that the government here entered the nolly because there were more serious charges pending in Georgia? That's absolutely correct. That is the reason that the prosecutor stated. And that Mr. Kramer was not likely to ever return to Connecticut. How is that a favorable termination? That's a very good question, Judge Ginn. And the SPAC case, which I was about to turn our attention to, details exactly what favorable termination means. And this was a 2017 case from this honorable court. I mean, the reasons don't indicate innocence. Would you agree with that? No, I do not, Your Honor. Because SPAC says, and I quote, not indicative of defendant's innocence. Now, the district court took that as a broad proposition saying there has to be some kind of indicia of innocence. But SPAC says that's not the correct reading of the specific term indicative of the defendant's innocence. And I quote, However, this qualifier is defined narrowly. It generally only includes nollies that are caused by the defendant either by his fleeing the jurisdiction to make himself unavailable for trial or delaying the trial by means of fraud. It also includes any nolly entered in exchange for consideration offered by the defendant. Now, that's exactly what I'm saying. That the state law, Doverstein I think the favorable termination question is a close one. But probable cause. I mean, wasn't there ample probable cause here to arrest him and to proceed with the charges? I will turn to probable cause, Judge Ginn. Probable cause is a heavily fact-bound question in this case. And at every turn, Judge Underhill, with all due respect to him, judged facts, did fail to recognize disputes of material fact, and then dismissed certain facts that were offered by the. I have certain, I understand your argument. I have certain problems, which I hope you can clear up for me. I will do my best, Your Honor. You say that your client was innocent of the charges in Georgia. I'm quoting. That's not true. At the time that the nolly was entered in Connecticut, there were pending charges, and Mr. Kramer bore. But he was not innocent of the charges. That's an incorrect statement. He bore a presumption of innocence, which I would say is innocent. He has to be viewed as innocent. Subsequent to this matter, there was a disposition in Georgia. And what happened? And he did, in fact, enter an Alford plea where he disputed the facts. There was a finding of guilt. He pled guilty. That was after this occurred. That's the first thing that I find problematic, if I might say so respectfully. That's perfectly fine, Judge. But at the time that the prosecutor said, look, he's got other issues elsewhere, I'm going to nolly this, Mr. Kramer was presumed innocent. That's an absolute constitutional fact. He was presumed innocent. You say that the defendants made, and I quote, No effort whatsoever to determine the reliability, credibility, or believability of Crystal Phillips, one of the witnesses against your client. But you're not contesting, are you, that the defendant took a voluntary sworn statement from Phillips? They took a sworn statement from Crystal Phillips. But in the context of other information that existed, including the presence of another Milford detective, Jay Cortez, who was on the scene, who viewed Mr. Kramer, who viewed what the interaction was that was going on, there were genuine disputes of material fact as to whether or not probable cause existed. This Nick Vallis, who was one of the other witnesses who later came forward. There was a pending order against him prohibiting any contact with children under 16. Mr. Kramer stated under oath, and that was presented to the court, that that was not the case, Your Honor. He believed that there was not a pending order that prohibited that. He may have believed it, but in fact the computer record showed that there was a pending order. At least the arresting officers believed there was a pending order. Isn't that a genuine dispute of material fact when Mr. Kramer states that he had in his possession and attempted to give to the arresting officers a more recent document that stated that that was no longer a condition of his release? Now the way this whole prosecution was instituted. You say his criminal case in Georgia had been closed as a matter of law. Closed as a matter of law. Is that correct? Mr. Kramer had asserted through his prior interactions with the habeas court in Connecticut and his litigation in Georgia that based upon Georgia law, and I confess to not being an expert on Georgia law, that based upon the expiration of two judicial terms, failing to have brought his case to trial, that he was de facto, the case was de facto dismissed. Is a reasonable police officer supposed to accept his word that I'm innocent or that the order is no longer any good? Well, there's an interesting thing about a reasonable police officer. After they arrested Mr. Kramer, people came forward, including the minor and the mother of the minor, and gave strong countervailing information. And the action of the officers themselves were to make a telephone call to the Georgia prosecutor, Porter, and say, what shall we do now? I think that's both indicative of a lack of probable cause on the part of the Milford Police Department to actually engage in this arrest, and indicia of malice. They did something because this out-of-state district attorney asked them to do it. They acted without following through, and they ignored exculpatory evidence that was brought forward to them prior to and subsequent to the arrest. And even after the arrest, knowing that there was no allegation of child porn in the pending but not determined Georgia case, they sought a warrant to seize and examine all of the computers and electronic material that Mr. Kramer had. There was nothing on there. The mother of the child and the child both, the child was grilled, the 14-year-old was grilled for six hours without the presence of the mom. The mom flew back from California, and the child stayed in custody for four more hours. Throughout that entire time, as presented to the district court, the child in no time said anything wrong happened. In all the time that he spent with Mr. Kramer, there's so many disputes of material fact that the judge should not have judged this in the manner that he did. Thank you. Thank you. And I've reserved a minute. You have rebuttal time. Thank you. May it please the court, my name is James Tallberg, and I represent the defendant, Antonio Vitti and Steven Starofsky, both of whom are sued in their capacity as detectives in the Milford, Connecticut police force. The district court's summary judgment ruling should be affirmed for four reasons principally. As you've addressed, the nolly didn't satisfy a favorable termination required for malicious prosecution. Second, there was an abundance of probable cause for the risk of injury charge under Connecticut General Statutes 53-21. We haven't really gotten to the third element that was missing of plaintiff's claim, an inability to show malice. These officers were simply trying to apprehend and bring an offender to justice. There was no evidence in the record to suggest that they had malice. And then finally, qualified immunity. The court hasn't addressed that yet, but their conduct at all times was objectively reasonable and did not violate clearly established law. On your first point on the nolly, do you agree that Roberts governs this case? Well, of course, Your Honor. But I would look more recently to SPAC, last year's 2017 decision. And I would say if you want to talk about the effect of a nolly, I think what really started to cause . . . Was there an arrangement with Kramer, you're saying? No. I would acknowledge Judge Chin's point, as the district court acknowledged. The favorable termination is a closer call, because it's not your classic plea agreement. But rather, if you draw the language out of SPAC from last year, where a nolly doesn't constitute a favorable termination . . . When it's entered for reasons that are not indicative of a defendant's innocence. That's really what you have here. Where the defendant, Mr. Kramer, was absent, couldn't be in court on the day he was supposed to be in court in Connecticut . . . And, this goes to Judge Chin's point about the Georgia order. I think the most important thing I would impress upon this court is contained in our supplemental appendix. Our Rule 56 Statement of Undisputed Facts. We had submitted 36 Statements of Undisputed Facts. The plaintiff agreed and admitted 26 of those. Including, at Special Appendix 16, that this modified bond order from Georgia . . . indicated that the defendant, Mr. Kramer, shall have no unsupervised contact with anyone under the age of 16. Now, he was in plain violation of that order, when the police got a report on the date of this incident . . . that Mr. Kramer was in a hotel room with a 14-year-old boy. Alone. Alone. Alone. And, we have two witness statements from Crystal Phillips and Nick Vallis, as you've noted. They're in the record, Special Appendix 52 to 54. And, Mr. Vallis at Special Appendix 56 to 58. Mr. Vallis swore under oath to the police, that when he went to the hotel room . . . So, when you couple these facts, you have a person who is not supposed to even be in the State of Connecticut. The modified bond order indicated that he could travel to New York or New Jersey . . . for the medical needs of his mother or himself, as needed. It didn't say anything about Connecticut. So, you have the two witness statements. You have the violation of the order. And, based on those undisputed facts, the police had every legitimate reason to find probable cause for the risk of injury charge. So, the specific aspect of the statute, 53-21, that you think obtains is what? Yes, just as the district . . . Well, I think the district court properly focused on the health of such child likely to be injured or the morals likely to be impaired. Under these facts, as you know, context does matter. A 14-year-old boy in a room with a 50-year-old man, who's not supposed to have unsupervised contact with a minor . . . because he's facing multiple sex offense charges in another jurisdiction. Okay. When you say that, just to be clear, and you touched on this in your briefs . . . you say that, at least as I understand it, that Connecticut's prosecution of Kramer for risk of injury terminated . . . and I quote, because and only because Kramer was in Georgia facing a felony prosecution . . . likely to preclude his return to Connecticut in the near future, if ever. Now, criminal defendants face charges in multiple jurisdictions all the time, don't they? Yes. So, is it your point that the prosecutors here were trying to save resources or something of that kind . . . and so terminated their prosecution of Kramer or is there some legal reason . . . from prosecuting him for risk of injury? No, it's the former, Your Honor. Just as the District Court noted and the disposition transcript is contained in the Special Appendix . . . Special Appendix 75 through 77. It's apparent that it would have been a waste of judicial resources when Mr. Kramer is facing more serious charges . . . as noted by his own lawyer. His own lawyer said, quote, he's got serious charges there. Oh, excuse me, that was the prosecutor. But, Mr. Kramer's own lawyer says, Mr. Kramer does not stand in front of Your Honor. He is currently held on bond in the state of Georgia. He was extradited back to that state to stand trial roughly a month ago on information and belief that is pretty solid. That's the order, the bond order that he had violated. So, our Connecticut Superior Court would have no reason to prosecute what the Federal Judge in the District Court concluded was a lesser offense. And, I think that's where Judge Underhill struggled in that he looked at the language of SPAC . . . and his struggle was that a criminal defendant should not be allowed to sue the police . . . So, as a matter of judicial economy, it made sense for the nolly to enter. It didn't, in any way, indicate innocence. But, what this Court has the opportunity to do is, you have the four primary reasons why summary judgment was proper. Lack of a favorable disposition, probable cause, lack of malice, qualified immunity. But, you can go farther and you can apply and broaden or at least clarify this language from SPAC . . . last year, so that those in the Connecticut law enforcement community criminal justice system can know what to do with these nollies. There has been great confusion going back to 1992 with Roche V. Oterola . . . as this Court noted last year in SPAC . . . And, a footnote that there are some district judges who have gone to the other extreme to say that you need a, you know, a conclusive disposition. Well, we could, as I understand it, we could affirm on the basis of the probable cause analysis . . . without reaching the favorable termination nolly issue. Correct? You surely could, Judge Katzman. But, when we look back at the history of this issue, starting in 1992 with Roche V. Oterola . . . there has been a lack of clarity and a lack of uniformity in how nollies have been treated. And, for example, Roberts v. Babkowitz that you cited, that was a case out of our office where summary judgment was reversed . . . because there wasn't sufficient evidence in the record about, well, what were the terms of the plea? The fact that the nolly entered on the same day that there was a lesser offense admitted to, that wasn't enough. This Court can just clarify that language from SPAC last year. And, that is what we respectfully request that this Court do in affirming Judge Underhill's summary judgment ruling. It could be a risky strategy or . . . Well, I'm not sure about that. It would at least provide clarity, Your Honor. So, unless there are any other questions, for all the foregoing reasons, we respectfully request that the District Court's grant of summary judgment be affirmed. Thank you. Thank you, Your Honor. Judge Katzman and other members of this Court, I do agree with my esteemed colleague that the reason that this nolly was entered by the prosecutor . . . was the prosecutor's interest in judicial economy and not for any of the bases set forth in Roberts, which is the controlling case. It was not something that the criminal defendant at that time did to, in any way, give consideration for. So, I think that that absolutely redounds to our favor. Now, as far as probable cause, malice, qualified immunity . . . Why was this not, if there was a bond and this was a violation of conditions of release, why was this not an arrest for violation of bond conditions? That doesn't negate probable cause in and of itself, but it also does give rise to and support the genuine disputes of material fact as to what the bond conditions were. Now, we know that Porter reached out to the defendants as police officers and allegedly told them there was a bond and he wasn't . . . One of the conditions were that Mr. Kramer was not supposed to be in the presence of someone under the age of 16 years old. Why was it not an arrest for a violation of that condition? Rather, this nebulous statute of risk of injury, as Judge Katzman points out, which has many ores and connectors in it . . . which covers a broad range of conduct and ill-defined in broad range of conduct, but none which occurred in this particular case. We also know that the mother of the child came forth, as did Mr. Kramer . . . and said that Mr. Kramer is the guardian of this child and had filed proper guardianship papers with the folks who were making this film. We also know that the child said expressly that nothing untoward had happened . . . to Mr. Kramer. There are . . . these were all disregarded out of hand by the court. The court simply said, oh, I never saw . . . it literally said, I never saw a guardianship paper, so I don't believe it. Where are they in the record? That is in the argument . . . Where are the guardianship papers in the record? Judge Chris, there are no guardianship papers that are in the record, but there is the assertion . . . and by Mr. Kramer that he was appointed guardian and those papers were filed. Why and how can a district court on summary judgment decide the credibility of Mr. Kramer . . . and decide against Mr. Kramer on a credibility issue in summary judgment? Simply can't. And, as far as qualified immunity goes, the same facts that underscore malice and probable cause . . . to determine whether maybe probable cause would . . . excuse me, maybe qualified immunity . . . might apply after those facts were determined by a fact finder. Our law is clear that when there are genuine disputes of material fact that buttress qualified immunity or probable cause or malice . . . they're submitted to a jury. They're not for the court to determine on summary judgment. I ask that this be reversed and remanded to the district court, Judge Underhill, for proceeding going forward. Thank you for hearing me. Thank you both for your arguments. The court will reserve decision.